[Cite as *State v. Martin*, 2013-Ohio-1944.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-L-043** |
| JOEL B. MARTIN, JR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 11 CR 000568.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor and *Alana A. Rezaee*, Assistant Prosecutor, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*R. Paul LaPlante*, Lake County Public Defender and *Vanessa R. Clapp*, Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Joel B. Martin, Jr., appeals from the April 5, 2012 judgment entry of the Lake County Court of Common Pleas, sentencing him to a total prison term of twelve years for aggravated robbery and kidnapping. Noting discrepancies between the testimony of various witnesses, he contends his convictions are against the manifest

weight of the evidence. He also contends the trial court should have merged counts against him for purposes of sentencing. Finding no error, we affirm.

{¶2} On the evening of September 24, 2011, just before 10:30 p.m., Omar Suleiman was closing his store, Raw Styles, in the city of Painesville, Ohio. Mr. Suleiman sells clothing and cell phone services at his store. A former client, Lawrence Bolden, known by the nickname "Speedy," entered, and asked to see some shoes. Mr. Suleiman went to his storeroom to search, only to find that Speedy was following him with a knife. Speedy told Mr. Suleiman it was a "shakedown," and the two began to fight. A second man, wearing a skull cap and partial face mask, entered. This man pushed Mr. Suleiman further into the back room, held him down, and tried to duct tape his hands. Mr. Suleiman then heard someone call out to leave; and, Speedy and the masked man ran out of the store.

{¶3} Mr. Suleiman ran behind his cash registers, and pressed his emergency button. Leaving his store, he encountered two employees from the Dunkin Donut store next door, Amanda Nicholson and Savannah Davis. He asked them to call 9-1-1 to report the robbery, which Ms. Nicholson did, and then attempted, unsuccessfully, to chase his assailants in his car. Eventually, Mr. Suleiman returned to his store, to find over $4,000 in cash missing.

{¶4} Ultimately, three men were arrested in connection with the robbery: Speedy, Mr. Martin, and Mr. Martin's nephew, Tarence Edwards, better known as "T-Rex." Mr. Edwards was identified as the masked man who attempted to duct tape Mr. Suleiman. Mr. Martin was identified as the mastermind of the plot. He was indicted on one count of Aggravated Robbery, a felony of the first degree in violation of R.C.

2

2911.01(A)(1); two counts of Robbery, second and third degree felonies in violation of R.C. 2911.02(A)(2) and 2911.02(A)(3), respectively; Kidnapping, a second degree felony in violation of R.C. 2905.01(A)(2); Abduction, a third degree felony in violation of R.C. 2905.02(A)(2); and Theft, a fifth degree felony in violation of R.C. 2913.02(A)(1).

{¶5} Jury trial commenced March 5, 2012. Mr. Suleiman, Speedy, Ms. Nicholson and Ms. Davis, and various investigating officers testified for the state. Mr. Martin testified on his own behalf. Mr. Suleiman testified that Mr. Martin had worked for him as odd help around the store; that he liked Mr. Martin; that Mr. Martin had a serious substance abuse problem; and, that he had been forced to tell Mr. Martin to stop coming to work, due to the substance abuse problem. He admitted he never saw Mr. Martin in his store the evening of the robbery.

{¶6} Speedy testified that he had met with Mr. Martin at the home where the latter was staying in the early evening of September 11, 2011, to smoke crack. He testified that Mr. Martin was upset about being fired by Mr. Suleiman, and suggested robbing Raw Styles. T-Rex arrived. According to Speedy, Mr. Martin determined that the three should go to the store; that Speedy would distract Mr. Suleiman by asking him to get some shoes; that T-Rex would then enter and hold Mr. Suleiman in the back room, while Mr. Martin cleared the cash registers. Speedy testified that Mr. Martin gave him the knife used in the robbery. Speedy testified that Mr. Martin left Raw Styles first, followed by him, with T-Rex leaving last.

{¶7} Defense counsel elicited that Speedy had given distinctly different stories to the police on his arrest and interrogation, and that he had entered a plea deal with the state for his testimony against Mr. Martin.

3

{¶8} The Dunkin Donut employees, Ms. Nicholson and Ms. Davis, testified they saw Mr. Martin leaving Raw Styles at the time of the robbery, and that they recognized him from his work at the store. They testified that he walked past them, telling them he had just been fired. Immediately thereafter, they testified that two other men came running out of Raw Styles, and that Mr. Martin joined them running toward a white SUV, in which the three left together.

{¶9} Defense counsel pointed out to the jury that the girls' story – that Mr. Martin left Raw styles first, followed by Speedy and T-Rex together – conflicted with Speedy's testimony that he and Mr. Martin left first, followed by T-Rex.

{¶10} Mr. Martin denied ever entering Raw Styles at the time of the robbery. He testified that he ran into Speedy and T-Rex outside the store that evening, and that the two asked him to go into the store, and distract Mr. Suleiman, while they robbed the store. He testified that he felt too guilty about the proposed plot to join.

{¶11} The jury returned verdicts of guilty on all counts March 8, 2012. Sentencing hearing was held April 3, 2012. The trial court merged the robbery and theft counts into that for aggravated robbery, and ordered Mr. Martin to serve ten years on that count. The trial court further merged the count for abduction into that for kidnapping, and sentenced Mr. Martin to serve two years on that count, to run consecutive to the sentence for aggravated robbery. Mr. Martin was also ordered to pay restitution. Eventually, this appeal ensued.

{¶12} Mr. Martin's first assignment of error reads: "The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence." Mr. Martin further sets this issue for review: "The

4

conviction of the defendant-appellant is not supported by competent, credible evidence which proves his guilt beyond a reasonable doubt."

{¶13} In *State v. Johnson*, 11th Dist. No. 2009-A-0050, 2010-Ohio-3046, ¶41-42, this court held:

{¶14} "A challenge to the manifest weight of the evidence involves factual issues. The 'weight of the evidence addresses the evidence's effect of inducing belief.' *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, at ¶25, * * * (citation omitted); *State v. Thompkins*, 78 Ohio St.3d 380, 387 [1997], * * * ('(w)eight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial"') (emphasis sic) (citation omitted). 'In other words, a reviewing court asks whose evidence is more persuasive -- the state's or the defendant's?' *Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, at ¶25, * * *.

{¶15} "'The (appellate) court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, * * *. '(T)he weight to be given to the evidence and the credibility of the witnesses are primarily for the trier of the facts.' *State v. DeHass* (1967), 10 Ohio St.2d 230, * * *, at syllabus; *State v. Thomas* (1982), 70 Ohio St.2d 79, * * *, at the syllabus. However, when considering a weight of the evidence argument, a reviewing court 'sits as a "thirteenth juror"' and may 'disagree() with the factfinder's resolution of the conflicting testimony.' *Thompkins*, 78 Ohio St.3d at 387, citing *Tibbs v. Florida*

5

(1982), 457 U.S. 31, 42, * * *. 'The only special deference given in a manifest-weight review attaches to the conclusion reached by the trier of fact.' *Id.* at 390 (Cook, J., concurring opinion)." (Parallel citations omitted.)

{¶16} Application of the foregoing standards to this case shows that the jury did not lose its way. It was made fully aware that Speedy's original statements to the police conflicted with his trial testimony – as, indeed, did Mr. Martin's. Defense counsel pointed out that Speedy's testimony regarding the robbers' exit from the store – Mr. Martin, himself, then T-Rex – conflicted with that of the Dunkin Donut employees. The jury heard both of the Dunkin Donut employees testify that Mr. Martin *did* exit Raw Styles that evening, and they heard his testimony that he never entered the store at all. These conflicts in the testimony all fall within the province of the jury: that the jury found Speedy and the Dunkin Donut employees more credible than Mr. Martin was its right.

{¶17} The first assignment of error lacks merit.

{¶18} Mr. Martin's second assignment of error reads: "The trial court erred to the prejudice of the defendant-appellant when it sentenced him to consecutive terms of imprisonment for aggravated robbery and kidnapping, in violation of his rights against Double Jeopardy under the Fifth and Fourteenth Amendment (sic) to the United States Constitution and Article I, Section 10 of the Ohio Constitution." Under this assignment of error, Mr. Martin presents this issue for review: "The trial court erred when it failed to merge the charges of Aggravated Robbery and Kidnapping as allied offenses of similar import." Essentially, Mr. Martin argues that any kidnapping of Mr. Suleiman – i.e., tricking him into the back room at his store – was merely incidental to the aggravated robbery. Mr. Martin cites to various cases to this effect from other districts.

6

**{¶19}** Our review of an allied offenses question is de novo. *State v. Williams*, 123 Ohio St.3d 482, 2012-Ohio-5699, ¶12. "R.C. 2941.25 'codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits multiple punishments for the same offense.' *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, * * * ¶23. At the heart of R.C. 2941.25 is the judicial doctrine of merger; merger is 'the penal philosophy that a major crime often includes as inherent therein the component elements of other crimes and that these component elements, in legal effect, are merged in the major crime.' *State v. Botta*, 27 Ohio St.2d 196, 201 * * * (1971)." (Parallel citations omitted.) *Williams* at ¶13.

**{¶20}** R.C. 2941.25 states:

**{¶21}** "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

**{¶22}** "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

**{¶23}** "To ensure compliance with both R.C. 2941.25 and the Double Jeopardy Clause, 'a trial court is required to merge allied offenses of similar import at sentencing. Thus, when the issue of allied offenses is before the court, the question is not whether a

particular sentence is justified, but whether the defendant may be sentenced upon all the offenses.' *Underwood* at ¶27." *Williams, supra,* at ¶15.

**{¶24}** The method employed by courts in determining whether two crimes constitute allied offenses of similar import has evolved. In *State v. Rance*, 85 Ohio St.3d 632 (1999), the Supreme Court of Ohio held that "[u]nder an R.C. 2941.25(A) analysis, the statutorily defined elements of offenses that are claimed to be of similar import are compared *in the abstract.*" *Id.*, paragraph one of the syllabus. (Emphasis sic.) Since its release, *Rance* has gone through various modifications and revisions. *See State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625; *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569; *State v. Winn*, 121 Ohio St.3d 413, 2009-Ohio-1059.

**{¶25}** The Supreme Court of Ohio revisited the allied offenses analysis again in 2010 and overruled *Rance* in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314. Under the new analysis, which this court later relied upon and embraced in *State v. May*, 11th Dist. No. 2010-L-131, 2011-Ohio-5233, "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Johnson*, at the syllabus. The *Johnson* court provided the new analysis as follows:

**{¶26}** "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

8

**{¶27}** "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' * * *.

**{¶28}** "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

**{¶29}** "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has [a] separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." *Id.* at ¶48-51. (Citations omitted.) (Emphasis sic.)

**{¶30}** This court went on to state in *May, supra,* at ¶50-51:

**{¶31}** "'In departing from the former test, the court developed a new, more context-based test for analyzing whether two offenses are allied thereby necessitating a merger. In doing so, the court focused upon the unambiguous language of R.C. 2941.25, requiring the allied-offense analysis to center upon the defendant's conduct, rather than the elements of the crimes which are charged as a result of the defendant's conduct.'" [*State v.*] *Miller*[,11th Dist. No. 2009-P-0090, 2011-Ohio-1161,] at ¶47, citing *Johnson* at ¶48-52.

**{¶32}** "'The (*Johnson*) court acknowledged the results of the above analysis will vary on a case-by-case basis. Hence, while two crimes in one case may merge, the same crimes in another may not. Given the statutory language, however, this is not a problem. The court observed that inconsistencies in outcome are both necessary and permissible "* * * given that the statute instructs courts to examine a defendant's

9

conduct - an inherently subjective determination.'" *Miller* at ¶52, quoting *Johnson* at ¶52."

**{¶33}** In our case, the issue is whether aggravated robbery and kidnapping are allied offenses of similar import subject to merger for purposes of sentencing, which we will review de novo. *Williams, supra,* at ¶12.

**{¶34}** Aggravated robbery, under R.C. 2911.01(A)(1), states in part: "[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"

**{¶35}** Kidnapping, under R.C. 2905.01(A)(2), provides in part: "[n]o person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, * * * [t]o facilitate the commission of any felony or flight thereafter[.]"

**{¶36}** The Supreme Court of Ohio has held that aggravated robbery and kidnapping are allied offenses of similar import. *See State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, ¶11. Again, under R.C. 2941.25, Ohio's multiple-count statute, if a defendant's conduct results in allied offenses of similar import, the defendant may ordinarily be convicted of only one of the offenses. R.C. 2941.25(A). However, if the defendant commits each offense separately or with a separate animus, then convictions may be entered for both offenses. R.C. 2941.25(B); *see also State v. Dean*, 11th Dist. No. 2010-P-0003, 2010-Ohio-5185, ¶40 (holding that the trial court did not abuse its

10

discretion in not merging aggravated robbery and kidnapping for sentencing because each had a separate animus.)

**{¶37}** Thus, although aggravated robbery and kidnapping are allied offenses, our treatment of appellant's argument is not over. The specific facts of this case must be reviewed to determine whether appellant committed the charged offenses separately or with a separate animus so as to permit multiple punishments.

**{¶38}** The aggravated robbery was complete when Speedy held Mr. Suleiman at knife point, told him it was a "shakedown," and Mr. Martin entered the store to empty the cash registers. T-Rex continued to restrain Mr. Suleiman and a physical struggle ensued in the back room. Mr. Suleiman indicated that T-Rex pushed him further into the back room, while Mr. Martin was emptying the registers. T-Rex attempted to duct tape the victim's hands behind his back during the struggle, which resulted in hair loss to the victim's arm. Although there is no evidence in the record that the duct tape used to restrain Mr. Suleiman was brought to the robbery, duct tape was nevertheless found at the scene, which corroborates the robbers' intent to physically restrain him. Thus, the plan to get Mr. Suleiman into the back room and the prolonged restraint involved subjected him to an increase in the risk of harm that was separate and apart from the aggravated robbery. *See State v. Chaffer*, 1st Dist. No. C-090602, 2010-Ohio-4471, ¶11, citing *State v. Logan*, 60 Ohio St.2d 126, syllabus (holding "that even without prolonged restraint, secret confinement, or substantial movement, where the asportation or restraint exposes the victims to a substantial increase in the risk of harm separate and apart from the underlying crime of robbery, a separate animus exists for kidnapping.")

11

{¶39} Further, as the state points out, this court has previously found that kidnapping has a separate animus from an allied offense "when the movement of the victim was achieved through deceit or trickery." *Dean*, supra, at ¶36. In this case, Mr. Suleiman was tricked into entering his back room in order to find the shoe desired by Speedy.

{¶40} Based on the facts of this case, the aggravated robbery and kidnapping were not committed with the same animus. Therefore, appellant was properly sentenced separately for each offense under R.C. 2941.25(B) and *Johnson*.

{¶41} The second assignment of error lacks merit.

{¶42} The judgment of the Lake County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.