[Cite as *State v. Ervin-Williams*, 2014-Ohio-5473.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2014-T-0009** |
| TAYLOR ERVIN-WILLIAMS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2013 CR 0143.

Judgment: Affirmed.

*Dennis Watkins,* Trumbull County Prosecutor, and *LuWayne Annos,* Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Kenneth J. Lewis,* 1220 West 6th Street, #502, Cleveland, OH 44113 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Taylor Ervin-Williams, appeals his convictions and sentence in the Trumbull County Court of Common Pleas on various charges of Aggravated Burglary, Aggravated Robbery, Kidnapping, Failure to Comply with Order or Signal of Police Officer, Having Weapons while under Disability, and Tampering with Evidence. The issues before this court are whether Ervin-Williams' aggregate thirty-nine-year prison sentence is "too harsh" given the mitigating circumstances and the fact

that his charges were allied offenses, and whether his convictions were against the manifest weight of the evidence where a weapon was not found on his person and the victims did not positively identify him based on his appearance. For the following reasons, we affirm the decision of the court below.

{¶2} On February 25, 2013, the underlying criminal action was initiated in the Warren Municipal Court with charges being filed against Ervin-Williams. An Indictment was subsequently issued and the case was transferred to common pleas court. Ervin-Williams pled not guilty to the charges.

{¶3} On May 30, 2013, the Trumbull County Grand Jury issued a Superseding Indictment, charging Ervin-Williams with the following: Aggravated Burglary (Count 1), a felony of the first degree in violation of R.C. 2911.11(A)(1) and (B), with a Firearm Specification in violation of R.C. 2941.145; Aggravated Robbery (Count 2), a felony of the first degree in violation of R.C. 2911.01(A)(1) and (C), with a Firearm Specification in violation of R.C. 2941.145; Kidnapping (Count 3), a felony of the first degree in violation of R.C. 2905.01(A)(2) and (C)(1), with a Firearm Specification in violation of R.C. 2941.145; Kidnapping (Count 4), a felony of the first degree in violation of R.C. 2905.01(A)(2) and (C)(1), with a Firearm Specification in violation of R.C. 2941.145; Failure to Comply with Order or Signal of Police Officer (Count 5), a felony of the third degree in violation of R.C. 2921.331(B), (C)(5)(a)(i), and (D); Having Weapons while under Disability (Count 6), a felony of the third degree in violation of R.C. 2923.13(A)(2) and (B); and Tampering with Evidence, a felony of the third degree in violation of R.C. 2921.12(A)(1) and (B).

2

{¶4} On June 7, 2013, Ervin-Williams entered a plea of not guilty to the charges in the Superseding Indictment.

{¶5} On January 6, 2014, a jury trial began. The following persons testified on behalf of the State:

{¶6} Reiko Williamson was living at 156 Charles Avenue in Warren, Ohio, with her four children on February 22, 2013. On this evening, three of her children were at home and another child was spending the night. Ms. Williamson had fallen asleep in her bedroom watching television with her oldest child, Bryce Humphrey (age nineteen).

{¶7} At about 10:00 p.m., Ms. Williamson was awakened by a stranger in her room. The stranger "had on jeans and a black hoody" with "a distinct glittery marking on the back," a "bright red bandana tied around his face," and was holding a gun. He addressed her: "Yeah, you know what this is. Get up. * * * Give me your money." The stranger instructed Ms. Williamson to wake Bryce up, which she did. Ms. Williamson gave the stranger forty dollars which she had in her purse. The stranger demanded more money, threatening that "somebody is going to die tonight" if she did not give him more money. Ms. Williamson protested that her money was in the bank. The stranger replied, "to the ATM, let's go."

{¶8} Ms. Williamson drove Bryce (in the passenger seat) and the stranger (in the back seat) in her Buick Century to the Seven Seventeen ATM machine on West Market Street. Since the driver's side window was not operating, Ms. Williamson exited the vehicle, withdrew three hundred dollars from the ATM, and handed it to the stranger. Ms. Williamson explained that three hundred dollars was the most she was able to withdraw from the ATM. The stranger replied: "You think I'm playing with you? I'm

3

gonna shoot him in the back of his head [indicating Bryce]. Get me more money." Ms. Williamson attempted to withdraw more money.

{¶9} When Ms. Williamson advised the stranger she was unable to withdraw more money, he demanded she "get in the car." Ms. Williamson motioned to Bryce with her hands, turned and began to run. Bryce exited the vehicle and followed. Bryce ran to the Hot Dog Shoppe and told the employees to call 911. Ms. Williamson flagged down a motorist and called 911 using his phone. When she looked back toward the ATM, the stranger and her Buick were gone.

{¶10} Later that evening, Ms. Williamson identified "the red bandana and the hoody with the sparkly stuff on the back" which had been recovered by the police.

{¶11} Bryce Humphrey testified that, after being awoken on the evening of February 22, 2013, he was made to lie on the floor, face down, by a stranger wearing "a black coat and a red bandana," and holding a gun. There was little conversation between the stranger and Bryce, but Bryce heard the stranger demanding money from his mother.

{¶12} Bryce accompanied his mother and the stranger to the ATM. On his mother's signal, he ran from the Buick. The stranger climbed into the front seat and drove away.

{¶13} That evening, Bryce was taken by police to an apartment on Belmont Avenue to identify a suspect. The suspect was not wearing a jacket or bandana. Since the suspect had been masked, Bryce was not able to make a physical identification. Bryce was able to identify the suspect as Ervin-Williams after hearing him speak. Bryce was "very certain" that Ervin-Williams was the man who had robbed his mother based

4

on the voice identification. Bryce further testified that Ervin-Williams was a casual acquaintance, whom he could have recognized if he could have seen his face. Later, at the police station, Bryce identified the jacket and bandana Ervin-Williams had been wearing.

{¶14} BreeAnn Humphrey testified that she was Ms. Williamson's daughter, but was not involved in the events of February 22, 2013. BreeAnn did testify that she was friends with Breyaja Emerson who was dating Ervin-Williams in February 2013. BreeAnn also testified that Ervin-Williams was living at Breyaja's apartment on Belmont Avenue.

{¶15} Officer David Weber of the Warren Police Department testified that, on the evening of February 22, 2013, he responded to a reported kidnapping and robbery in the vicinity of the Hot Dog Shoppe. The suspect was reported to be operating a tan-colored Buick. Officer Weber encountered the Buick in the area of South Street and Charles Avenue and began pursuit. The Buick fled at speeds in excess of the posted speed limits and without regard for traffic control devices.

{¶16} On Elm Road, the Buick drove into an empty grassy lot just north of Handyman Ace Hardware. Officer Weber continued on Elm until he was able to turn east on Washington Street. Officer Weber noted that the driver's side door opened and the interior dome light of the Buick came on while the vehicle was passing through the grassy lot.

{¶17} Pursuit continued until the driver of the Buick abandoned the vehicle on Prospect Avenue. Officer Weber then pursued the suspect on foot. Officer Weber lost sight of the suspect, but neighborhood residents directed him toward a duplex at 354

Belmont Avenue. Through the front picture window, Officer Weber observed a male subject walking toward the rear of the house. At this point, other police officers were covering the building's exits and a search of the duplex began.

**{¶18}** In the upstairs apartment (352 Belmont Avenue), Officer Weber located a man and woman on a mattress on the floor acting "like they were sleeping when they weren't." The male identified himself as Ervin-Williams and was arrested. In the same room, Officer Weber recovered a pair of wet, muddy boots and testified that the ground over which he had pursued the suspect was wet and muddy.

**{¶19}** Officer Timothy Ladner of the Warren Police Department testified that he was involved in the pursuit of Ervin-Williams on February 22, 2013. Officer Ladner's police cruiser passed the Buick coming from the opposite direction on Charles Avenue. Officer Ladner was able to observe the driver of the Buick and subsequently identified him as the suspect arrested on Belmont Avenue, i.e., as Ervin-Williams. At the Belmont Avenue residence, Officer Ladner found a black jacket and a red bandana lying on the floor of a ground-floor closet. In the drawer of an end table, Officer Ladner found a toy plastic handgun. Elsewhere in the residence, he recovered Ervin-Williams' identification card.

**{¶20}** Officer Eric Laprocina of the Warren Police Department interviewed Bryce at the Hot Dog Shoppe on the evening of February 22, 2013, and drove him to the Belmont residence. From the back of Officer Laprocina's police cruiser, Bryce was able to observe Ervin-Williams and hear him speak. Upon hearing Ervin-Williams' voice, Bryce identified him "definitely" as the man who abducted him and his mother.

{¶21} Wayne Thorne testified that, on February 23, 2013, he found a handgun in the grassy area next to the Handyman Hardware on Elm Road. Thorne noted that the gun had live shells.

{¶22} Sergeant Sherrey McMahon of the Warren Police Department testified regarding the custody of the physical evidence in the case.

{¶23} Officer Carrie Betts of the Trumbull County Adult Probation Department testified that, in January 2013, Ervin-Williams was placed under her supervision as part of his sentence in Trumbull County Common Pleas Case No. 12-CR-541, for two counts of Burglary.

{¶24} Officer Brian Cononico of the Warren Police Department was present at the Belmont Avenue residence when Ervin-Williams was arrested. Officer Cononico testified that he was yelling at the officers, calling them "soft" and their police cruisers "slow and [saying] that we couldn't keep up with him."

{¶25} Officer Frank Tempesta of the Warren Police Department was present at the Belmont Avenue residence when Ervin-Williams was arrested. Officer Tempesta testified that Ervin-Williams was yelling that the police cruisers were slow and "ain't shit" and that he cannot be "charged with aggravated robbery if [he] don't have a gun."

{¶26} Detective Michael Stabile of the Warren Police Department testified that he submitted the handgun found by Thorne and buccal swabs taken from Ervin-Williams to the Bureau of Criminal Identification and Investigation.

{¶27} Lynda Eleveth, a forensic scientist for the Bureau of Criminal Identification and Investigation, testified that a partial DNA profile from the trigger of the handgun found by Thorne (a Rossi .38 Special) was a mixture consistent with contributions from

7

Ervin-Williams and an unknown individual, and that the proportion of the population that cannot be excluded as possible contributors to the DNA profile is 1 in 5,540 unrelated individuals.

{¶28} At the close of the State's case, counsel for Ervin-Williams moved the trial court for acquittal under Criminal Rule 29, which motion the court denied.

{¶29} On January 8, 2014, the jury returned a verdict of guilty on all seven counts of the Indictment.

{¶30} On January 15, 2014, a sentencing hearing was held. At the conclusion of the hearing, the trial court sentenced Ervin-Williams to serve ten years in prison for Count 1 (Aggravated Burglary) to be served consecutively to the sentences for Counts 2, 3, and 4 with three additional years for the Firearm Specification; ten years in prison for Count 2 (Aggravated Robbery) to be served consecutively to the sentences for Counts 1, 3, and 4 with three additional years for the Firearm Specification; ten years in prison for Count 3 (Kidnapping) to be served consecutively to the sentences for Counts 1, 2, and 4 with the Firearm Specification merging with the Firearm Specification for Count 1; ten years in prison for Count 4 (Kidnapping) to be served consecutively to the sentences for Counts 1, 2, and 3 with the Firearm Specification merging with the Firearm Specification for Counts 1 and 2; sixty months in prison for Count 5 (Failure to Comply with Order or Signal of Police Officer) to be served consecutively to all other sentences; thirty-six months in prison for Count 6 (Having Weapons while under Disability) to be served concurrently to all other sentences; and thirty-six months in prison for Count 7 (Tampering with Evidence) to be served concurrently to all other

sentences. Additionally, the court suspended Ervin-Williams' driving privileges for three years.

**{¶31}** On January 15, 2014, a written Entry on Sentence was issued.

**{¶32}** On January 23, 2014, a resentencing hearing was held. The sentence for Count 5 was corrected to thirty-six months in prison.

**{¶33}** On January 28, 2014, a Nunc pro Tunc Entry was issued.

**{¶34}** On February 14, 2014, Ervin-Williams filed his Notice of Appeal.

**{¶35}** On April 10, 2014, an Amended Entry on Sentence was issued, modifying Ervin-Williams' sentence so that the ten-year sentence for Count 3 would be served concurrently with the ten-year sentence for Count 4. Ervin-Williams' aggregate sentence was thirty-nine years.

**{¶36}** On appeal, Ervin-Williams raises the following assignments of error:

**{¶37}** "[1.] The trial court erred and abused its discretion in sentencing the appellant too harshly."

**{¶38}** "[2.] The appellant/defendant's convictions were against the manifest weight of the evidence."

**{¶39}** We will discuss the second assignment of error first.

**{¶40}** In Ohio, "a court of appeals has the authority to reverse a judgment as being against the weight of the evidence." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 7. "No judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause." Ohio Constitution, Article IV, Section 3(B)(3).

**{¶41}** Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*."

*State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

**{¶42}** The court [of appeals], reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.

*Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

**{¶43}** "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley* at ¶ 21; *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3 ("every reasonable

intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts") (citation omitted).

{¶44} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony." (Citation omitted.) *Thompkins* at 387. "When a court of appeals determines that a jury verdict is against the weight of the evidence, it should remand the case for a new trial." *Eastley* at ¶ 22.

{¶45} Ervin-Williams asserts that "the State of Ohio failed to adequately prove * * * that [he] was the assailant on the night in question" and "that ANY firearm had been utilized in connection with the crimes that took place on the night in question." Appellant's brief at 14.

{¶46} With respect to the identification, Ervin-Williams notes that Ms. Williamson never identified him as the assailant whom she described as wearing a "black hoody." The black jacket recovered from the Belmont Avenue apartment was not a hoody-style jacket (it did not have a hood), but it did have a silver-glitter emblem on the back. Ervin-Williams also notes that Bryce only made a voice identification and that was after he had been apprehended and in police custody. None of these considerations alter the conclusion that the greater amount of credible evidence favors the identification of Ervin-Williams as the assailant. Ms. Williamson was never asked to identify Ervin-Williams and, immediately following her escape, was being treated by EMS for an asthma attack. Bryce was certain of the voice identification and his testimony was credible. Officer Ladner positively identified Ervin-Williams as the man operating Ms.

11

Williamson's Buick and Officer Weber identified him as the man who abandoned the Buick and fled to the Belmont Avenue apartment. These identifications were corroborated by Ervin-Williams' comments regarding the slow speed of the pursuing police cruisers. The possibility that the assailant was someone different from the Buick's operator is not a serious consideration.

{¶47} With respect to the use of a firearm in the commission of the crimes, Ervin-Williams notes that the gun recovered from the Belmont Avenue apartment was a toy, plastic gun. Neither Ms. Williamson nor Bryce identified with certainty which gun was used to commit the crimes. The evidence, nevertheless, supports the jury's conclusion that Ervin-Williams had used the .38 Special recovered from the grassy field on Elm Road. Officers Weber and Tempesta observed Ervin-Williams' flight through the field and Officer Weber observed him open the door (significant given Ms. Williamson's testimony that the window was inoperable). The trigger of the .38 Special contained Ervin-Williams' DNA. Ervin-Williams' comment that, without a gun, he could not be charged with aggravated robbery further supports the conclusion that Ervin-Williams had used the abandoned .38 Special in the commission of the crimes.

{¶48} The second assignment of error is without merit.

{¶49} Under the first assignment of error, Ervin-Williams challenges his sentence as being excessively "harsh" in light of the mitigating circumstances and asserts that he received consecutive sentences for allied offenses of similar import.

{¶50} "[A]ppellate courts must apply a two-step approach when reviewing felony sentences. First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the

12

sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard." *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 26.

**{¶51}** Ervin-Williams claims his aggregate sentence of thirty-nine years is too harsh. There is little in the record to support this contention. Ervin-Williams did not accept responsibility for or acknowledge his conduct. To Ms. Williamson, he apologized for what "you went through with this case" and hoped she could sleep better knowing "someone is incarcerated." Ms. Williamson demonstrated more genuine remorse for Ervin-Williams' fate than he did.

**{¶52}** With respect to allied offenses, Ervin-Williams claims that he should not have been sentenced for Aggravated Burglary, Aggravated Robbery, and two counts of Kidnapping as "the events of this case arose out of one burglary, and one kidnapping." Appellant's brief at 13.

**{¶53}** Ohio's multiple counts statute or allied offenses of similar import statute provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a

13

separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25; *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979) (the use of the term "animus" in R.C. 2941.25(B), interpreted as meaning "purpose or, more properly, immediate motive," requires an examination of "the defendant's mental state in determining whether two or more offenses may be chiseled from the same criminal conduct").

{¶54} The Ohio Supreme Court has described the application of R.C. 2941.25 as follows:

In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. *Blankenship,* 38 Ohio St.3d at 119, 526 N.E.2d 816 (Whiteside, J., concurring) ("It is not necessary that both crimes are always committed by the same conduct but, rather, it is sufficient if both offenses *can be* committed by the same conduct. It is a matter of possibility, rather than certainty, that the same conduct will constitute commission of both offenses." [Emphasis sic]). If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." *Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J., dissenting).

If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge.

*State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 48-51.

{¶55} "An appellate court should apply a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination." *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶56} Ervin-Williams' Aggravated Burglary conviction arose from his trespass, by force, stealth, or deception, of Ms. Williamson's residence while she and her children were present for the purpose of taking forty dollars of her money and threatening to inflict physical harm on her and Bryce. R.C. 2911.11(A)(1).

{¶57} The acts constituting Aggravated Burglary completed, Ervin-Williams proceeded to commit two incidents of Kidnapping, when, by force and threat, he removed Ms. Williamson and Bryce from the residence for the purpose of committing

15

Aggravated Robbery. R.C. 2905.01(A)(2). As there were two victims of the Kidnapping, the two Kidnapping charges were not allied offenses. *State v. Lewis*, 11th Dist. Lake No. 2012-L-074, 2013-Ohio-3974, ¶ 122 ("[w]hen the same offense is committed against different victims during the same course of conduct, there is a separate animus as to each victim; therefore, under such circumstances, the multiple offenses are not deemed 'allied' for purposes of R.C. 2941.25, and a separate sentence can be imposed for each offense").

{¶58} The Ohio Supreme Court has recognized that "implicit within every robbery (and aggravated robbery) is a kidnapping." *State v. Jenkins*, 15 Ohio St.3d 164, 198, 473 N.E.2d 264 (1984), fn. 29. "Therefore, a kidnapping specification merges with an aggravated robbery specification unless the offenses were committed with a separate animus." *State v. Fears*, 86 Ohio St.3d 329, 344, 715 N.E.2d 136 (1999). The Ohio Supreme Court adopted the following guidelines "[i]n establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B)":

> (A) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;

16

(B) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345, at syllabus.

{¶59} In the present case, the movement of Ms. Williamson and Bryce was not merely incidental to the underlying Aggravated Robbery. Rather, their movement was substantial and a necessary precursor of the Aggravated Robbery. Ervin-Williams had to compel Ms. Williamson to drive to the ATM to obtain the money of which he would rob her. Having obtained her three hundred dollars from the ATM, Ervin-Williams prolonged the Kidnapping by ordering her back to the ATM in a futile attempt to obtain more money and, thereafter, back into the Buick. While facilitating the commission of the Aggravated Robbery, the acts constituting the Kidnapping remained distinct with an independent significance from those of the Robbery. Had Ervin-Williams initially accosted Ms. Williamson at the ATM, the animus or immediate motive for the restraint and the theft would have substantially been the same.

{¶60} There are several cases supporting the conclusion that, when a victim is forcibly moved from one location to another for the purpose of enabling another offense, the Kidnapping charge does not merge. *State v. Houston*, 1st Dist. Hamilton No. C-130429, 2014-Ohio-3111, ¶ 25-26 (Kidnapping did not merge where the victim "was removed from the home by Houston's armed compatriot, and forced to drive several minutes to a local bank, get out of the car, and withdraw money from an ATM machine")

17

(cases cited); *State v. Martin*, 11th Dist. Lake No. 2012-L-043, 2013-Ohio-1944, ¶ 38 ("the plan to get Mr. Suleiman into the back room and the prolonged restraint involved subjected him to an increase in the risk of harm that was separate and apart from the aggravated robbery"); *State v. Vance*, 10th Dist. Franklin No. 11AP-755, 2012-Ohio-2594, ¶ 16-17 (where the "defendant transported the victim from the Walgreens, where he took the victim's belongings, to an ATM, where he withdrew money from her account, * * * the kidnapping, although part of the aggravated robbery, involved substantial asportation and prolonged restraint, both of which support the trial court's determination that defendant had a separate animus for the kidnapping").

{¶61} The first assignment of error is without merit.

{¶62} For the foregoing reasons, Ervin-Williams' convictions and sentence for various counts of Aggravated Burglary, Aggravated Robbery, Kidnapping, Failure to Comply with Order or Signal of Police Officer, Having Weapons while under Disability, and Tampering with Evidence in the Trumbull County Court of Common Pleas are affirmed. Costs to be taxed against appellant.


TIMOTHY P. CANNON, P.J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part, with a Concurring/Dissenting Opinion.


_____


COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part, with a Concurring/Dissenting Opinion.

18

**{¶63}** I agree with the majority regarding appellant's second assignment of error that his convictions are not against the manifest weight of the evidence. Upon review, the state presented ample evidence that appellant was the assailant in this matter and that he committed these crimes with a loaded firearm. The jury found the state's witnesses credible and chose to believe them. *State v. DeHass*, 10 Ohio St.2d 230, paragraph one of the syllabus (1967). Based on the evidence presented, the jury did not clearly lose its way in finding appellant guilty. *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *14-15 (Dec. 23, 1994); *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶64}** However, I disagree with the majority regarding appellant's first assignment of error as I believe aggravated burglary, aggravated robbery, and kidnapping are allied offenses of similar import, were committed with the same animus, and should have merged for sentencing.

**{¶65}** R.C. 2953.08(G) and the clear and convincing standard should be applied to determine whether a felony sentence is contrary to law. *See, e.g., State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, ¶10; *State v. Drobny*, 8th Dist. Cuyahoga No. 98404, 2013-Ohio-937, ¶5, fn.2; *State v. Kinstle*, 3rd Dist. Allen No. 1-11-45, 2012-Ohio-5952, ¶47; *State v. Cochran*, 10th Dist. Franklin No. 11AP-408, 2012-Ohio-5899, ¶52.

**{¶66}** In reviewing a felony sentence, R.C. 2953.08(G) provides:

**{¶67}** "(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

19

**{¶68}** "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

**{¶69}** "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

**{¶70}** "(b) That the sentence is otherwise contrary to law."

**{¶71}** Although trial courts have full discretion to impose any term of imprisonment within the statutory range, they must consider the sentencing purposes in R.C. 2929.11 and the guidelines contained in R.C. 2929.12.

**{¶72}** In this case, the trial court consecutively sentenced appellant and found that all seven counts involve separate, distinct conduct and that none of the counts constitute allied offenses subject to merger. For the reasons that follow, this writer disagrees.

**{¶73}** This court's review of an allied offenses question is de novo. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶12. "R.C. 2941.25 'codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits multiple punishments for the same offense.' *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, * * * ¶23. At the heart of R.C. 2941.25 is the judicial doctrine of merger; merger

20

is 'the penal philosophy that a major crime often includes as inherent therein the component elements of other crimes and that these component elements, in legal effect, are merged in the major crime.' *State v. Botta*, 27 Ohio St.2d 196, 201 * * * (1971)." (Parallel citations omitted.) *Williams* at ¶13.

{¶74} R.C. 2941.25 states:

{¶75} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶76} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶77} "R.C. 2941.25(A) clearly provides that there may be only *one conviction* for allied offenses of similar import. Because a defendant may be convicted of only one offense for such conduct, the defendant may be sentenced for only one offense. * * * [A]llied offenses of similar import are to be merged at sentencing. *See State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, * * * ¶43; *State v. McGuire*, (1997) 80 Ohio St.3d 390, 399. Thus, a trial court is prohibited from imposing individual sentences for counts that constitute allied offenses of similar import. * * * Both R.C. 2941.25 and the Double Jeopardy Clause prohibit multiple convictions for the same conduct. For this reason, a trial court is required to merge allied offenses of similar import at sentencing." *Underwood, supra,* at ¶26-27. (Emphasis sic.) (Parallel citations omitted.)

{¶78} "Under Crim.R. 52(B), '(p)lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.' * * * [I]mposition of multiple sentences for allied offenses of similar import is plain error. *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087 * * * ¶96-102." *Underwood, supra,* at ¶31. (Parallel citation omitted.)

{¶79} By way of a brief history, the method employed by courts in determining whether two crimes constitute allied offenses of similar import has evolved. In *State v. Rance*, 85 Ohio St.3d 632 (1999), the Supreme Court of Ohio held that "[u]nder an R.C. 2941.25(A) analysis, the statutorily defined elements of offenses that are claimed to be of similar import are compared *in the abstract*." *Id.*, paragraph one of the syllabus. (Emphasis sic.) Since its release, *Rance* has gone through various modifications and revisions. *See State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625; *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569; *State v. Winn*, 121 Ohio St.3d 413, 2009-Ohio-1059.

{¶80} The Supreme Court of Ohio revisited the allied offenses analysis again in 2010 and overruled *Rance* in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314. Under the new analysis, which this court later relied upon and embraced in *State v. May*, 11th Dist. Lake No. 2010-L-131, 2011-Ohio-5233, "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Johnson*, *supra,* at the syllabus. The *Johnson* court provided the new analysis as follows:

{¶81} "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and*

22

commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

{¶82} "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'

{¶83} "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

{¶84} "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has [a] separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." *Id.* at ¶48-51. (Citations omitted.) (Emphasis sic.)

{¶85} This court went on to state in *May, supra,* at ¶50-51:

{¶86} "'In departing from the former test, the court developed a new, more context-based test for analyzing whether two offenses are allied thereby necessitating a merger. In doing so, the court focused upon the unambiguous language of R.C. 2941.25, requiring the allied-offense analysis to center upon the defendant's conduct, rather than the elements of the crimes which are charged as a result of the defendant's conduct.' [*State v.*] *Miller*[,11th Dist. Portage No. 2009-P-0090, 2011-Ohio-1161,] at ¶47, citing *Johnson* at ¶48-52.

23

**{¶87}** "'The (*Johnson*) court acknowledged the results of the above analysis will vary on a case-by-case basis. Hence, while two crimes in one case may merge, the same crimes in another may not. Given the statutory language, however, this is not a problem. The court observed that inconsistencies in outcome are both necessary and permissible "(* * *) given that the statute instructs courts to examine a defendant's conduct - an inherently subjective determination."'" *Miller* at ¶52, quoting *Johnson* at ¶52."

**{¶88}** The issue here is whether any of appellant's convictions are allied offenses of similar import subject to merger for purposes of sentencing, which this court shall review de novo. *Williams, supra,* at ¶12. As stated, appellant was charged with, convicted of, and sentenced on seven counts: count one, aggravated burglary; count two, aggravated robbery; counts three and four, kidnapping; count five, failure to comply with order or signal of police officer; count six, having weapons while under disability; and count seven, tampering with evidence. The majority of appellant's 39-year sentence stems from the charges involving aggravated burglary, aggravated robbery, and kidnapping. Thus, a de novo review should be conducted in order to determine whether any of these three main charges are allied offenses subject to merger.[1]

**{¶89}** R.C. 2911.11(A)(1), aggravated burglary, states: "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or

---

1. Regarding the lesser charges, this writer notes that having weapons while under disability and tampering with evidence have been found to not be allied offenses. *See State v. Thomas*, 8th Dist. Cuyahoga No. 94042, 2010-Ohio-5237, ¶28. In addition, I have found no case that has included failure to comply with order or signal of police officer and tampering with evidence as allied offenses.

24

in the separately secured or separately occupied portion of the structure any criminal offense, if * * * [t]he offender inflicts, or attempts or threatens to inflict physical harm on another[.]"

{¶90} R.C. 2911.01(A)(1), aggravated robbery, states: "[n]o person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"

{¶91} R.C. 2905.01(A)(2), kidnapping, states: "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o facilitate the commission of any felony or flight thereafter[.]"

{¶92} Applying *Johnson*, aggravated burglary, aggravated robbery, and kidnapping are allied offenses of similar import, as it is possible to commit one offense and commit the other with the same conduct. *See State v. Lacavera*, 8th Dist. Cuyahoga No. 96242, 2012-Ohio-800, ¶47 (aggravated burglary, aggravated robbery, and kidnapping are allied offenses subject to merger); *see also State v. Jenkins*, 15 Ohio St.3d 164, 198, fn. 29 (1984) ("implicit within every robbery (and aggravated robbery) is a kidnapping"). Again, under R.C. 2941.25, Ohio's multiple-count statute, if a defendant's conduct results in allied offenses of similar import, the defendant may ordinarily be convicted of only one of the offenses. R.C. 2941.25(A). However, if the defendant commits each offense separately or with a separate animus, then convictions may be entered for both offenses. R.C. 2941.25(B).

**{¶93}** Thus, although aggravated burglary, aggravated robbery, and kidnapping are allied offenses, the specific facts of this case must be reviewed to determine whether appellant committed the charged offenses separately or with a separate animus so as to permit multiple punishments.

**{¶94}** This case involves two victims, Williamson and Humphrey. The general rule is that when allied offenses are committed against two or more victims, the defendant may be sentenced for two or more crimes. *State v. Fields*, 97 Ohio App.3d 337, 346 (1st Dist.1994). However, a rigid application of this "general rule" can lead to inequitable or even absurd results. To that end, the First District Court of Appeals stated:

**{¶95}** "To extend this analysis to every multiple-victim/multiple-crimes case would be to adopt a bright-line rule that allied offenses affecting separate victims, regardless of the defendant's conduct, are not subject to merger and can always be punished separately. This bright-line rule would run afoul of supreme court case law and of the very text of R.C. 2941.25, which 'itself instructs us to look at the defendant's conduct when evaluating whether his offenses are allied.' *Johnson*, [*supra,*] at ¶42. In *Johnson*, the court cautioned against tests that 'instruct us to jump immediately' to conclusions based upon solely abstract or formulaic assumptions. *Id.* It acknowledged that 'this analysis may be sometimes difficult to perform and may result in varying results for the same set of offenses in different cases. But different results are permissible, given that the statute instructs courts to examine a defendant's conduct - an inherently subjective determination.' *Id.* at ¶52. As one appellate court has noted, '*Johnson* ushered in a new era where trial courts are always required to delve into the

26

factual underpinnings of the case in order to resolve (this) issue, akin to the factual inquiries required under *State v. Logan* [* * *].' *State v. Baker*, 8th Dist. No. 97139, 2012-Ohio-1833, ¶13. We do not believe the General Assembly or the supreme court intended our conduct-based inquiry to begin and end by counting the number of victims." *State v. Anderson*, 1st Dist. Hamilton No. C-110029, 2012-Ohio-3347, ¶37. (Parallel citations omitted.)

**{¶96}** The facts before this court do not support that appellant committed an aggravated burglary, then decided separately to commit an aggravated robbery, then decided separately to commit two kidnappings. Rather, the manner of appellant's actions supports a single "purpose" that should lead to merger. The evidence reveals that appellant's purpose was to obtain money, irrespective of how many individuals he actually encountered. Because there was only $40 in the house, appellant forced the victims to drive him to a nearby ATM where Williamson withdrew $300. The victims ran away and appellant drove off in the vehicle. He was chased by police and arrested.

**{¶97}** The record establishes that the incidents occurred simultaneously. Also, appellant evidenced the same animus in committing the offenses. Looking to appellant's conduct, this was a single act with a single state of mind. The test under *Johnson* is not whether the elements line up, which is the essence of the *Rance* analysis. Rather, the test is whether the crimes were committed by the same conduct and with the same animus. In this case, I believe they were.

**{¶98}** "'[T]he purpose of R.C. 2941.25 is to prevent shotgun convictions, that is, multiple findings of guilt and corresponding punishments heaped on a defendant for closely related offenses arising from the same occurrence.'" *State v. Helms*, 7th Dist.

27

Mahoning No. 08 MA 199, 2012-Ohio-1147, ¶68, quoting *Johnson, supra,* at ¶43, citing *Maumee v. Geiger*, 45 Ohio St.2d 238, 242 (1976).  In this case, multiple sentences have been improperly "heaped" on appellant, pursuant to the principles and purposes of sentencing under R.C. 2929.11, which under H.B. 86 now provides: "[t]he overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender *using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources.*"  R.C. 2929.11(A).  (Emphasis added.)  Thus, the legislature has given us the tools as well as a mandate to address the issues of keeping dangerous criminals off the street, while balancing Ohio's financial deficits and an already overcrowded prison system.

{¶99}  Based on the facts of this case, I believe aggravated burglary, aggravated robbery, and kidnapping are allied offenses of similar import, were committed with the same animus, and should have merged.  Therefore, the trial court erred in stacking his offenses along with the firearm specifications.  Appellant's sentence was excessive as he should not have been sentenced separately for the offenses.

{¶100} For the foregoing reasons, I concur in part and dissent in part.